IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MINNESOTA

| | | |
|---|---|---|
| GRAPHIC PACKAGING INTERNATIONAL, LLC, | ) ) ) | |
| Plaintiff, | ) | C.A. No. 0:15-03476-ECT-LIB |
| v. | ) ) | |
| INLINE PACKAGING, LLC, | ) ) | |
| Defendant. | ) ) | |

**PLAINTIFF GRAPHIC PACKAGING INTERNATIONAL, LLC'S**
**<u>OPENING CLAIM CONSTRUCTION BRIEF</u>**

## TABLE OF CONTENTS

I.      INTRODUCTION ..................................................................................................4

II.     LEGAL STANDARD..........................................................................................5

        A.      Design Patent Claim Construction..........................................................5

        B.      Functionality and Design Patent Scope ..................................................6

III.    ARGUMENT ........................................................................................................8

        A.      The Patents-in-Suit...................................................................................8

        B.      Proposed Constructions .........................................................................12

        C.      The Existence of Functional Elements Does Not Require Elimination of
                Those Elements from the Claimed Design .............................................13

        D.      Function Does Not Dictate the Appearance of the Individual Features or
                Overall Design .......................................................................................14

        E.      The Consideration of Extrinsic Evidence Regarding Functionality is
                Unnecessary and Premature...................................................................23

IV.     CONCLUSION...................................................................................................24

## <u>TABLE OF AUTHORITIES</u>

**Cases**

*Apple Inc. v. Samsung Elecs. Co., Ltd.*,
    786 F.3d 983 (Fed. Cir. 2015)..................................................................... 3

*Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*,
    853 F.2d 1557 (Fed. Cir. 1988)............................................................... 4, 5

*Berry Sterling Corp. v. Pescor Plastics, Inc.*,
    122 F.3d 1452 (Fed. Cir. 1997)............................................................. 5, 10

*Best Lock Corp. v. Ilco Unican Corp.*,
    94 F.3d 1563 (Fed. Cir. 1996)..................................................................... 5

*Crocs, Inc. v. Int'l Trade Comm'n*,
    598 F.3d 1294 (Fed. Cir. 2010)................................................................... 3

*Dexas Int'l, Ltd. v. Office Max Inc.*,
    2009 WL 252164 (E.D. Tex. Jan. 30, 2009)............................................... 3

*Egyptian Goddess, Inc. v. Swisa, Inc.*,
    543 F.3d 665 (Fed. Cir. 2008).............................................................. 1, 2, 3

*Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*,
    796 F.3d 1312 (Fed. Cir. 2015)..................................................... 3, 4, 5, 20

*Hupp v. Siroflex of Am., Inc.*,
    122 F.3d 1456 (Fed. Cir. 1997)................................................................... 4

*In re Harvey*,
    12 F.3d 1061 (Fed. Cir. 1993)..................................................................... 2

*Jenny Yoo Collection, Inc. v. Essense of Australia, Inc.*,
    2019 WL 195030 (D. Kan. Jan. 15, 2019)................................................ 21

*L.A. Gear, Inc. v. Thom McAn Shoe Co.*,
    988 F.2d 1117 (Fed. Cir. 1993)................................................................... 5

*Markman v. Westview Instruments, Inc.*,
    517 U.S. 370 (1996)................................................................................... 2

*Nordock, Inc. v. Systems, Inc.*,
    927 F. Supp. 2d 577 (E.D. Wis. 2013)....................................................... 3

*PHG Techs., LLC v. St. John Cos., Inc.*,
    469 F.3d 1361 (Fed. Cir. 2006)............................................................. 5, 21

*Phillips v. AWH Corp.*,
    415 F.3d 1303 (Fed. Cir. 2005) ............................................................................ 2

*Rosco, Inc. v. Mirror Lite Co.*,
    304 F.3d 1373 (Fed. Cir. 2002) ............................................................................ 5

*Solar Sun Rings, Inc. v. Wal-Mart Stores, Inc.*,
    2012 WL 5379144 (C.D. Cal. Oct. 31, 2012) ..................................................... 3

*Sport Dimension, Inc. v. Coleman Co.*,
    820 F.3d 1316 (Fed. Cir. 2016) .............................................................. 3, 4, 10

*Sunny Fresh Foods, Inc. v. Michael Foods, Inc.*,
    205 F. Supp. 2d 1077 (D. Minn. 2002) ............................................................... 2

*Vitronics Corp. v. Conceptronic, Inc.*,
    90 F.3d 1576 (Fed. Cir. 1996) ............................................................................. 2

**Statutes**

35 U.S.C. § 101 ............................................................................................................. 2

35 U.S.C. § 171 ........................................................................................................ 1, 3

## I.      INTRODUCTION

Graphic Packaging International, LLC ("Graphic") submits that the claims of the Patents-in-Suit should be construed as the overall visual impression depicted in the drawings.  Because the Patents-in-Suit are design patents, the claimed inventions are defined by the drawings.  Unlike utility patents, where the words of the claims define the scope of the invention, the scope of a design patent is defined by illustrations and is not easily reduced to a verbal description.  Accordingly, the Federal Circuit has repeatedly instructed trial courts that "the preferable course ordinarily will be for a district court not to attempt to 'construe' a design patent claim by providing a detailed verbal description of the claimed design."  *Egyptian Goddess, Inc. v. Swisa, Inc.*, 543 F.3d 665, 679 (Fed. Cir. 2008) (en banc).  This case presents no unique facts that would warrant departure from this "preferable course."

Yet Inline's proposed construction asks that the Court find the Patents-in-Suit have no claim scope because "there are no non-functional aspects of the design" – effectively asking the Court to invalidate the Patents-in-Suit at claim construction.  For support, Inline apparently intends to urge the Court to consider extensive extrinsic evidence and make substantive factual findings regarding functionality, including expert reports and deposition testimony from other proceedings.  But whether function dictates the appearance of a patented design is a fact question, and Inline's attempt to invalidate the patents under the guise of claim construction is premature and improper.

Inline's statements to date regarding functionality also suffer from a misapplication of design patent law: that any design features that have a function cannot be included in the claim scope.  Design patents protect the overall ornamental (or visual) appearance of articles of manufacture.  The eligibility requirements for a design patent under 35 U.S.C. § 171 do not preclude functionality; by providing protection for the visual appearance of "article[s] of

manufacture," § 171 expressly acknowledges that design patents may coexist with functional articles patentable under 35 U.S.C. § 101.  Where, like here, a design patent depicts features with underlying functions – but whose appearance are not dictated by such functions – the visual appearance of the features is properly included in the claim scope.

Graphic respectfully requests that the Court construe the Patents-in-Suit as claiming the overall visual appearance of the blanks and constructs shown in the drawings.

## II.   LEGAL STANDARD

### A.   Design Patent Claim Construction

Claim construction is the process by which a court determines the claim scope of a patented invention.  *Markman v. Westview Instruments, Inc.*, 517 U.S. 370, 388–91 (1996).  The claims themselves are the primary source for construing the scope of a patent.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312, 1314 (Fed. Cir. 2005) (en banc).  The second source is the intrinsic evidence in the patent's record, which consists of the specification and prosecution history.  *Id.* at 1315.  Only when a claim remains ambiguous after reviewing the intrinsic evidence can a court consider extrinsic evidence outside that record.  *Sunny Fresh Foods, Inc. v. Michael Foods, Inc.*, 205 F. Supp. 2d 1077, 1087 (D. Minn. 2002) (citing *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).  All of this evidence must be viewed from the perspective of one of ordinary skill in the art – here, a designer of ordinary skill in the art ("DOSA").  *Phillips*, 415 F.3d at 1313.

As opposed to utility patents, where scope is determined based on the words of written claims, the drawings of a design patent define its scope.  *See In re Harvey*, 12 F.3d 1061, 1064 (Fed. Cir. 1993); *Egyptian Goddess*, 543 F.3d at 679 (the scope of a design patent is "shown in [the] drawings").  A design patent "is better represented by an illustration than it could be by any description."  *Egyptian Goddess*, 543 F.3d at 679 (internal quotations omitted).  "Given the recognized difficulties entailed in trying to describe a design in words, the preferable course" is

for the Court to refrain from "providing a detailed verbal description of the claimed design." *Id*. "[D]etailed verbal claim constructions increase 'the risk of placing undue emphasis on particular features of the design and the risk that a finder of fact will focus on each individual described feature in the verbal description rather than on the design as a whole.'" *Sport Dimension, Inc. v. Coleman Co.*, 820 F.3d 1316, 1320 (Fed. Cir. 2016) (quoting *Egyptian Goddess*, 543 F.3d at 679).

Accordingly, the general rule is that "the illustration in the drawing . . . is its own best description." *Crocs, Inc. v. Int'l Trade Comm'n*, 598 F.3d 1294, 1303 (Fed. Cir. 2010). Under this guidance, district courts have repeatedly construed design patent claims as the visual appearance of the claimed article as shown in the drawings. *See, e.g.*, *Apple Inc. v. Samsung Elecs. Co., Ltd.*, 786 F.3d 983, 999 (Fed. Cir. 2015) (affirming district court's construction that design patent claimed the ornamental design as shown in the figures); *Nordock, Inc. v. Systems, Inc.*, 927 F. Supp. 2d 577, 587-89 (E.D. Wis. 2013) (construing claim as "[t]he ornamental design of a lip and hinge plate for a dock leveler, as shown and described"); *Solar Sun Rings, Inc. v. Wal-Mart Stores, Inc.*, 2012 WL 5379144, at *3 (C.D. Cal. Oct. 31, 2012) (construing claim as ornamental design shown in the patent's drawings); *Dexas Int'l, Ltd. v. Office Max Inc.*, 2009 WL 252164, at *7 (E.D. Tex. Jan. 30, 2009) (construing claim as "[a] clipboard adapted to hold documents of a certain design, as shown in Figures 1-7").

## B.   Functionality and Design Patent Scope

The design patent eligibility statute, 35 U.S.C. § 171, requires that a design patent claim an "ornamental design for an article of manufacture."[1]  And while a design patent claim "must be

---

[1] The standards regarding functionality in claim construction and functionality for validity are the same. *See Ethicon Endo-Surgery, Inc. v. Covidien, Inc.*, 796 F.3d 1312, 1334 (Fed. Cir. 2015) (reversing district court's construction of the claim as having no scope because the appearance of the claimed elements was not "essential to the use of the article"); *Sport*

limited to the ornamental aspects of the design[,]" "a design may contain both functional and ornamental elements." *Sport Dimension*, 820 F.3d at 1320 (internal quotations and citations omitted). The fact that elements of a design patent have a function is not enough to exclude those features during claim construction; in fact, functionality is required: "[T]he fact that the article of manufacture serves a function is a <u>prerequisite of design patentability, not a defeat thereof</u>." *Hupp v. Siroflex of Am., Inc.*, 122 F.3d 1456, 1460 (Fed. Cir. 1997) (emphasis added). "Were that not true, it would not be possible to obtain a design patent on a utilitarian article of manufacture." *Avia Grp. Int'l, Inc. v. L.A. Gear Cal., Inc.*, 853 F.2d 1557, 1563 (Fed. Cir. 1988) (citations omitted).

"[A]s long as the design is not primarily functional, the design claim is not invalid, even if certain elements have functional purposes. That is because a design patent's claim protects an article of manufacture, which necessarily serves a utilitarian purpose." *Sport Dimension*, 820 F.3d at 1320 (internal quotations and citations omitted). Contrary to Inline's proposal, "in no case" should a court "entirely eliminate a structural element from the claimed ornamental design, even though that element also serve[s] a functional purpose." *Id.* at 1321 (holding that the district court's construction conflicted with the "principle of design patent claim construction because it eliminates whole aspects of the claimed design"); *see also Ethicon*, 796 F.3d at 1334 ("[T]he district court's construction of the Design Patents to have no scope whatsoever fails to account for the particular ornamentation of the claimed design and departs from our established legal framework for interpreting design patent claims.").

---

*Dimension*, 820 F.3d at 1320-21 (stating that the Federal Circuit has "blessed claim constructions . . . where the court helped the fact finder distinguish between those features of the claimed design that are ornamental and those that are purely functional," and discussing functionality for claim construction using factors used to determine whether the appearance of a design is dictated by function for validity) (internal quotations and citations omitted).

An article's design is primarily functional when "the appearance of the claimed design is dictated by the use or purpose of the article." *L.A. Gear, Inc. v. Thom McAn Shoe Co.*, 988 F.2d 1117, 1123 (Fed. Cir. 1993) (internal quotations and citations omitted). This determination "ultimately rest[s] on an analysis of [the patented design's] overall appearance." *Berry Sterling Corp. v. Pescor Plastics, Inc.*, 122 F.3d 1452, 1455 (Fed. Cir. 1997). The standard for finding that the appearance of a design is primarily functional is "stringent." *Rosco, Inc. v. Mirror Lite Co.*, 304 F.3d 1373, 1378 (Fed. Cir. 2002). The most significant – "if not dispositive" – factor weighing against a finding of total functionality is the availability of alternative designs. *Ethicon*, 796 F.3d at 1329-30; *see also Best Lock Corp. v. Ilco Unican Corp.*, 94 F.3d 1563, 1566 (Fed. Cir. 1996); *Avia*, 853 F.2d at 1563.

Significantly, given that this case is in the claim construction phase, "[w]hether a patented design is functional or ornamental is a question of fact." *PHG Techs., LLC v. St. John Cos., Inc.*, 469 F.3d 1361, 1365 (Fed. Cir. 2006).

## III.    ARGUMENT

### A.    The Patents-in-Suit

The underlying articles of manufacture that the Patents-in-Suit illustrate are blanks and constructs (or sleeves) that can be used as heating vessels for various food items, to facilitate browning and crisping of these foods in a microwave, to hold the food for transporting and consumption, and to assist the consumer to access the food in a convenient way. Declaration of John Floros, Ph.D. ("Floros Decl.") ¶43. The blanks and constructs have been used in connection with a variety of commercial products, including HOT POCKET® sandwiches and LEAN CUISINE® spring rolls. *Id.*

To accomplish these functions, the blanks and sleeves depicted in the drawings include features such as end panels that can be closed to hold the food after heating, apertures for

ventilation, and an opening for conveniently accessing the food in the sleeve after heating. *Id.* The commercialized products further include microwave interactive materials for browning and crisping. *Id.*

Separate from the underlying functionality of the depicted articles, the claims of the Patents-in-Suit are discussed below.

### i.     The '106 Patent

The sole Figure of the '106 Patent is as follows, with the patent claiming the ornamental design for a carton blank, as shown and described:



This Figure does not include a tear-away strip or removable portion as part of the protected design.[2]

### ii.     The '145 Patent

The sole Figure of the '145 Patent is as follows, with the patent claiming the ornamental design for a carton blank, as shown and described:

---

[2] '106 Patent at 1 ("The broken lines depict environmental subject matter and form no part of the claimed design.") (Dkt. No. 1-2); *see also* Floros Decl. ¶¶36-37.



A boundary line extends across the blank to from a boundary of the claimed design such that the portion of the blank beyond the boundary line is not part of the claimed design.[3]  The '145 Patent does not claim the features such as the apertures, fold lines, and tear lines shown in the uniform broken lines.[4]

### iii.    The '124 Patent

The '124 Patent also has a single claim, but as it relates to a carton construct, several views are necessary to show all claimed elements of the design.  The first set, Figures 1-8, depict the claimed construct in an open configuration:

---

[3] '145 Patent at 1 ("The broken lines in the form of an alternating series of relatively short dashes and relatively long dashes represents a boundary of the claimed design.") (Dkt. No. 1-4); *see also* Floros Decl. ¶¶38-39.

[4] '145 Patent at 1 ("The broken lines in the form of an alternating series of relatively short dashes and relatively long dashes represents a boundary of the claimed design.") (Dkt. No. 1-4); *see also* Floros Decl. ¶¶38-39.



This patent does not claim a tear-away strip or removable portion as part of the protected design.[5]   The second set, Figures 10 through 16, depict the claimed construct in a closed configuration:[6]

---

[5] '124 Patent at 2 ("The broken lines shown herein are for illustrative purposes and form no part of the claimed design.") (Dkt. No. 1-3); *see also* Floros Decl. ¶¶40-41.

[6] *Id*. ¶42.



### B. Proposed Constructions

Because the Patents-in-Suit are design patents, a proper construction should not extend to the functions of these features, but should be limited in scope to the overall visual appearance of these features in combination. A DOSA would not take the functionality of the design features into consideration when viewing the drawings of the Patents-in-Suit. For example, he/she would not consider the patents to cover the function of selectively closeable end panels for carrying a food item; a DOSA would focus instead on their visual appearance – in combination with the visual contributions of the other design elements. Floros Decl. ¶¶44-45.

The Patents-in-Suit should be construed as their overall visual appearance as shown in the drawings:

| Patent | Graphic's Proposed Constructions |
|---|---|
| '106 Patent | The overall ornamental appearance of the design for a carton blank shown in Figure 1. |
| '145 Patent | The overall ornamental appearance of the design for a carton blank shown in Figure 1. |

| Patent | Graphic's Proposed Constructions |
|--------|----------------------------------|
| '124 Patent | The overall ornamental appearance of the design for a carton shown in Figures 1-16. |

Floros Decl. ¶¶46-48.

### C.   The Existence of Functional Elements Does Not Require Elimination of Those Elements from the Claimed Design

Inline's proposed constructions – that the Patents-in-Suit have no claim scope "because there are no non-functional aspects of the design" – are misplaced because they rest on two flawed interpretations of design patent law: (1) that any design feature that has a function must be eliminated from a claim's scope; and (2) that the functionality of the appearance of design features can be considered in isolation rather than their overall visual impression when combined.

It is well-established that it would be improper to completely disregard design features simply because they serve a functional purpose, as Inline urges. *See Sports Dimension*, 820 F.3d at 1322 (rejecting claim construction that factored out elements that "serve[d] a useful purpose" entirely as "contrary to our law").  Because a design patent protects an "article of manufacture" that must have some utility, a design patent may include functional features, so long as the claim scope is limited to the aesthetic contributions those features make to the overall visual appearance of the claimed design.  *Id*. at 1320-21.

And in seeking to exclude elements from the claims, Inline encourages the Court to "improperly convert[] the claims scope of the [Patents-in-Suit] from one that covers the overall ornamentation to one that covers individual elements."  *Id*. at 1322.  Proper design patent claim construction "ultimately rest[s] on an analysis of [the patented design's] overall appearance."  *Berry*, 122 F.3d at 1455.  By asking the Court to sever elements from the overall design and

consider their functionality, Inline's proposed constructions would preclude an examination of the claimed designs as a whole.

Inline's proposed constructions invite error by wholly disregarding elements of the claims that have a function.  Such a construction would block a DOSA from appropriately considering how these elements contribute to the overall visual appearance of the designs in sum, and should be rejected.  Floros Decl. ¶¶51-52.

### D.     Function Does Not Dictate the Appearance of the Individual Features or Overall Design

Even if Inline were correct to contend that design features should be totally eliminated from a claim's scope if they have a function, Inline cannot show that either the appearance of separate elements or the overall design are dictated by function as would be required to demonstrate that the Patents-in-Suit have no scope and thus may also be invalid.  The intrinsic record establishes that the overall appearance of the claimed designs, and each constituent feature, is not primarily functional because it reflects design choices from many available alternatives that can perform substantially the same underlying functions.  Floros Decl. ¶53.

The Patents-in-Suit each claim priority to Provisional Application No. 60/748,638, dated December 8, 2005, and Patent Application No. 11/567,364, dated December 6, 2006 ("the '364 Application").  The '364 Application states that the claimed invention can perform substantially the same functions as the underlying articles illustrated in the Patents-in-Suit: heating, browning and/or crisping, and holding and/or transporting a food item.  Floros Decl. ¶54; JA Ex. A at Abstract.[7]  Included in the '364 Application are many different alternative designs capable of achieving those functions, including both graphical and configurational variations of edges, apertures, and closing features:

---

[7] "JA Ex. __" refers to the Exhibits in the Joint Appendix.







Floros Decl. ¶¶55-58.  A DOSA would recognize that the '364 Application's inventor discussed the functions of these features while also acknowledging that there are many design variations available capable of performing the same functions.  *Id.* ¶59.

Like the '364 Application, the prior art disclosed in the Patents-in-Suit further confirms the existence of many visual alternatives that could provide the same or substantially the same underlying functionality as the patents claim, such as heating, carrying and/or transporting, and convenient access:

| Prior Art | Alternative Design Figure |
|---|---|
| U.S. Patent No. 6,877,634 | <br>FIG. 2A    FIG. 8A |
| U.S. Pub. No. 2010/0193509 | <br>FIG. 1A<br><br>FIG. 8 |

| Prior Art | Alternative Design Figure |
|---|---|
| |  |
| U.S. Patent No. 8,061,265 | |
| U.S. Pub. No. 2006/0096978 | |

| Prior Art | Alternative Design Figure |
|---|---|
|  |  Fig. 11 |
| U.S. Patent No. 8,063,344 |  FIG. 11B |
| U.S. Patent No. 7,473,875 |  FIG.2A |

| Prior Art | Alternative Design Figure |
|---|---|
| U.S. Patent No. 7,667,167 |  FIG.1A |
| U.S. Patent No. 6,683,289 |  FIG. 9A    FIG. 10A |
| U.S. Patent No. 5,938,110 |  FIG. 4 |

| Prior Art | Alternative Design Figure |
|---|---|
| |  |
| U.S. Patent No. 5,510,132 |  |

| Prior Art | Alternative Design Figure |
|---|---|
| U.S. Patent No. 5,078,273 |  |

Floros Decl. ¶¶60-61; JA Exs. B-L.  With knowledge of this prior art, a DOSA would know that there are many different visual expressions for the underlying functionality of the features in the Patents-in-Suit.  *Id.* ¶61.  The copious available alternatives for the claimed designs confirm that the appearance of their features is not dictated by function, providing the patents with a scope that is commensurate with the overall visual appearance of the drawings.  *See Ethicon*, 796 F.3d at 1329-30 ("We have often focused, however, on the availability of alternative designs as an important – if not dispositive – factor in evaluating the legal functionality of a claimed design.").

E.    **The Consideration of Extrinsic Evidence Regarding Functionality is Unnecessary and Premature**

Inline has forecasted that it intends to present the Court with wide-ranging extrinsic evidence that allegedly supports its functionality arguments, including testimony and expert reports from other cases and proceedings regarding a different patent.  Dkt. No. 109-3. Admitting this evidence at this juncture would be inappropriate because the drawings of the Patents-in-Suit are unambiguous, and as explained, there is no need to consider whether certain elements of the Patents-in-Suit could perform a function because it is improper to eliminate such features at claim construction.

Indeed, because courts construe design patents based on the drawings, the consideration of extrinsic evidence is often inappropriate.   "[W]hile courts may interpret claims from the viewpoint of one skilled in the art, courts do so in light of the *intrinsic evidence*, as opposed to *extrinsic evidence*, which should only be used as an aid in understanding the intrinsic evidence, not to change the meaning of the claims. . . .  [T]he case law regarding design patent claim construction clearly cautions against verbally describing the drawings, as would be done with utility patents claims, meaning extrinsic evidence may be even less valuable [in design patent cases]."  *Jenny Yoo Collection, Inc. v. Essense of Australia, Inc.*, 2019 WL 195030, at *6 (D. Kan. Jan. 15, 2019) (emphasis in original).

In *Jenny Yoo Collection*, the court declined to allow depositions of the accused infringer's employees as part of claim construction discovery for the asserted design patent because the patent owner was attempting to "advocate for a claim construction more likely to lead to a finding of infringement," which constituted an improper use of extrinsic evidence.  *Id.* at *7.  Similarly, Inline improperly seeks to assert extrinsic evidence in an attempt to invalidate the Patents-in-Suit as having no claim scope because they are purely functional.  The Court should decline to permit Inline to impermissibly present testimony and evidence on issues of fact at claim construction.  *PHG Techs*, 469 F.3d at 1364 ("[w]hether a patented design is functional or ornamental is a question of fact").

## IV.   CONCLUSION

For the reasons stated above, Graphic respectfully requests that the Court adopt its proposed constructions.

Date:  May 22, 2019                    Respectfully submitted,

By:  */s/Felicia J. Boyd*
      Felicia J. Boyd, MN #186168
      **BARNES & THORNBURG LLP**
      225 South Sixth Street, Suite 2800
      Minneapolis, MN 55402
      Telephone: (612) 367-8729
      Facsimile: (612) 333-6798
      felicia.boyd@btlaw.com

      Barry Herman (*pro hac vice*)
      **WOMBLE BOND DICKINSON (US) LLP**
      100 Light Street, 26th Floor
      Baltimore, MD 21202
      Telephone:  (410) 545-5830
      Barry.Herman@wbd-us.com

      James F. Vaughan (*pro hac vice*)
      Christine H. Dupriest (*pro hac vice*)
      **WOMBLE BOND DICKINSON (US) LLP**
      271 17th Street, Suite 2400
      Atlanta, Georgia 30363
      Telephone: (404) 962-7538
      James.Vaughan@wbd-us.com
      Christine.Dupriest@wbd-us.com

      David R. Boaz (*pro hac vice*)
      **WOMBLE BOND DICKINSON (US) LLP**
      555 Fayetteville Street, Suite 1100
      Raleigh, NC 27601
      Telephone:  (919) 755-8124
      David.Boaz@wbd-us.com

      ***Attorneys for Plaintiff Graphic Packaging***
      ***International, LLC***